IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALEJANDRINO LOPEZ, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:25-cv-568 |
| | § | |
| DALLAS COUNTY HOSPITAL DISTRICT | § | |
| D/B/A PARKLAND HEALTH AND | § | |
| HOSPITAL SYSTEM D/B/A PARKLAND | § | |
| MEMORIAL HOSPITAL, | § | |
| Defendant. | § | |

## COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Alejandrino Lopez ("hereinafter "Plaintiff" and "Lopez"), and files this complaint against Dallas County Hospital District d/b/a Parkland Health and Hospital System d/b/a Parkland Memorial Hospital (hereinafter "Defendant" and "Parkland"), and would respectfully show the Court as follows:

## I.  PARTIES

1.    Plaintiff Alejandrino Lopez is an individual residing in Grayson County, Texas.

2.    Defendant Dallas County Hospital District d/b/a Parkland Health and Hospital System d/b/a Parkland Memorial Hospital ("Parkland") is a hospital district established and operated in the manner provided by Article 12, Section 9, of the Texas Constitution and by Texas Health and Safety Code Chapter 286 doing business in Texas and may be served by serving its President and Executive Officer, Frederick P. Cerise, 5200 Harry Hines Blvd., Dallas, Texas 75235 and its Executive Vice President and Chief Legal Officer Steve Roth, 5200 Harry Hines Blvd., Dallas, Texas 75235.

## II. JURISDICTION

3.    Jurisdiction is founded on federal question, specifically 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended; and 42 U.S.C.A. §2000e, *et seq.* (Unlawful Employment Practices), as amended.

4.    All prerequisites to filing suit have been met.

## III. FACTS

5.    Plaintiff was employed for almost thirty (30) years by beginning in June 1994 by Dallas County Hospital District d/b/a Parkland Health and Hospital System d/b/a Parkland Memorial Hospital, in Dallas, Texas. At the time of his discharge on or about December 7, 2023, he was employed as a registered nurse (Sr. RN Spec – ICU/CCU/PC) in the Surgical ICU.  He maintained a good work record.

6.    Upon information and belief, Defendant had twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, the requisite number of employees to constitute an "employer" under the ADEA.

7.    Upon information and belief, Defendant had fifteen or more or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, the requisite number of employees to constitute an "employer" under Title VII.

8.    On or about August 23, 2023, Keri White from Human Resources, telephoned Plaintiff and ordered him to immediately report to the hospital for a drug test.  He was told if he did not, he would be immediately discharged.

9.    Present at the drug test were two police officers, Katie Mapula, the ICU Director, and Pam Farrington, Unit Manager, along with two nurses from Employee Health, Karen (Last Name Unknown) and another unidentified.  The rapid drug test administered on August 23, 2023 was

negative.  Upon being told the test was negative, the police officers told Plaintiff he was free to go.  Plaintiff left with the police officers; Ms. Mapula and Ms. Farrington remained in the laboratory.

10.     Parkland Policy mandated Plaintiff be restored to work immediately.  However, Plaintiff was not returned to work.  Instead, Ms. Mapula put him on administrative leave.  As a result, Parkland violated its own written policy (Probably Cause Drug Testing, 6000-410).

11.     Parkland never notified its Drug Diversion Control Officer as required by its own policies (Unresolved Drug Discrepancy, SYS.HR.007).  No law enforcement agency was notified of the alleged diversion or theft as required by Parkland's own policies (Reporting the Theft or Loss of Controlled Substances and/or Dangerous Drugs, PHR-P-409A).

12.     A second blood test taken on August 23, 2023, was sent to an out of state laboratory.  When Plaintiff telephoned the lab to request the results, he was told that the sample had expired before testing and there were no results for it.

13.     In a telephone conversation on or about September 12, 2023, Pam Farrington (age approximately 50-55 years, white) informed Plaintiff he was being dismissed.  Also on the call were Katie Mapula (age approximately 40-45 years, white) and the associate unit manager, Lisa Walker (approximately 55-59 years, white).

14.     Plaintiff was told that on August 19, 2023, it was reported by an unidentified person of Plaintiff allegedly being seen in a non-assigned patient room (#412) near the medication infusion with a syringe in his hand.  Theresa Rushing (age approximately 30-35 years, white), the nurse assigned to that room that shift, had requested Plaintiff's assistance because the patient was so ill.  In fact, she was frequently nowhere to be found and the patient's mother, also a nurse, came to Plaintiff requesting assistance for her son.  While unkinking the line in the tubing, Plaintiff found a syringe lying in the patient's bed and another dangling on the IV pump and others around the room.  He

cleaned up all the syringes he found.

15.     On August 20, 2023, another unidentified person allegedly accused Plaintiff of stealing medication from the patient in Room 412.  The nurse assigned to the patient that shift, Relin Raja (age approximately 35-40 years, Asian) was not suspended pursuant to Parkland policy.  Nor was her friend Colin Tsang (age approximately 35-40 years, Asian) who was also working on the floor and spent most of the day with Ms. Raja lying on a stretcher in the hallway laughing and playing with their phones.

16.     Parkland waited four (4) days after the alleged reports to conduct a drug test.  Upon information and belief, no other nurses on duty on those dates were subjected to drug testing or discipline.

17.     Plaintiff timely filed his Step I Appeal of the disciplinary action and appealed the subsequent decisions to Step III.

18.     On or about December 7, 2023, the Step III Appeal panel upheld the decision terminating his employment with Parkland.

19.     At the time of his discharge, Plaintiff was earning approximately $58.44 per hour for approximately 74 hours per biweekly pay period plus shift differentials, benefits, and retirement plans.  In 2022, he earned $109,375.22.

20.     Plaintiff alleges he was been discriminated against based on his age (58) and race/ethnicity (Hispanic).

21.     Plaintiff contends that Defendant violated 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended; and 42 U.S.C.A. §2000e, *et seq*. (Unlawful Employment Practices), as amended.

**Complaint** - **Page 4**
federal\lopez.parkland\complaint.01\042925\jrh

## IV. FEDERAL CLAIMS FOR RELIEF AND DAMAGES

## COUNT I

## Violations of 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended

22.     Plaintiff incorporates the factual allegations contained in paragraphs 5-21 herein as if set out verbatim.

23.     Plaintiff was discharged in violation of 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended, and protecting Plaintiff from discrimination on the basis of age.

24.     Plaintiff was 58 years of age at the time of his removal as registered nurse (Sr. RN Spec – ICU/CCU/PC) in Parkland's Surgical ICU.

25.     Plaintiff was well qualified for the position of Sr. RN Spec – ICU/CCU/PC, based upon his education, training, and approximately thirty (30) years of experience in nursing.

26.     Any reason Defendant may offer for discharging Plaintiff as Sr. RN Spec – ICU/CCU/PC is purely pretextual, as Plaintiff never received a negative performance review and was never given notice of performance deficiencies of any kind during his almost thirty (30) years of employment with Defendant.

27.     Plaintiff claims all relief, legal and equitable that effectuate his rights under 29 U.S.C. § 623, *et seq*. (Age Discrimination in Employment Act of 1967, "ADEA"), as amended.

28.     Plaintiff requests reasonable attorney's fees as permitted under 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended.

29.     On or about July 17, 2024, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On March 5, 2025, Plaintiff received the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission, which was dated March 5, 2025.

30.     In addition to Count I, or in the alternative, Plaintiff alleges as follows:

## COUNT II

**Violations of  42 U.S.C.A. § 2000e, *et seq.* (Unlawful Employment Practices), as amended**

31.     Plaintiff incorporates the factual allegations contained in paragraphs 5-21 herein as if set out verbatim.

32.     Plaintiff alleges that he was discriminated against in violation of 42 U.S.C.A. §2000e, *et seq*. (Unlawful Employment Practices), as amended, protecting Plaintiff (Hispanic) from discrimination in the workplace based on his race.

33.     Plaintiff was well qualified for the position of Sr. RN Spec – ICU/CCU/PC, based upon his education, training, and approximately thirty (30) years of experience in nursing.

34.     Any reason Defendant may offer for discharging Plaintiff as Sr. RN Spec – ICU/CCU/PC is purely pretextual, as Plaintiff never received a negative performance review and was never given notice of performance deficiencies of any kind during his almost thirty (30) years of employment with Defendant.

35.     Plaintiff claims all relief, legal and equitable, that effectuate his rights under 42 U.S.C.A.  § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

36.     Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C.A.  § 2000e, e*t seq*. (Unlawful Employment Practices), as amended.

37.    On or about July 17, 2024, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On March 5, 2025, Plaintiff received the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission, which was dated March 5, 2025.

## V. DAMAGES

38.    Plaintiff would show that he has sustained damages within the jurisdictional limits of the Court as a proximate cause of Defendant's wrongful conduct.

39.    Plaintiff claims all relief at law and in equity pursuant to 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended; and 42 U.S.C.A. §2000e, *et seq*. (Unlawful Employment Practices), as amended.

## VI. ATTORNEY'S FEES

40.    Plaintiff would show that, as a result of Defendant's wrongful conduct as set forth herein, he is entitled to reasonable and necessary attorneys' fees.

## VII. JURY DEMAND

41.    Plaintiff requests that this matter be tried before a jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that upon final hearing hereof, Plaintiff have judgment against Defendant for actual damages in an amount within the jurisdictional limits of the Court together with interest on said amount at the highest rate allowed by law; reinstatement; liquidated damages; mental anguish; reasonable attorneys' fees; costs of court; prejudgment and postjudgment interest; and any and all further relief, at law or in equity, general or special, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**RONALD R. HUFF**
Attorney and Counselor at Law
112 South Crockett Street

Sherman, Texas 75090
(903) 893-1616 (telephone)
(903) 813-3265 (facsimile)
ronhuff@gcecisp.com


 /s/ Ronald R. Huff
Ronald R. Huff (SBN 10185050)

**ATTORNEY FOR PLAINTIFF**